UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE P.,[1] | Case No. 2:19-cv-08308-GJS |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security Administration, | |
| Defendant. | |

## I.  PROCEDURAL HISTORY

Julie P. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security terminating her previously granted Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. [Dkt. 1.] The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 9 and 10] and briefs addressing disputed issues in the case [Dkt. 14 ("Pl. Br."), Dkt. 15 ("Def. Br."), and Dkt. 16 ("Rep.")].  The Court has taken the parties' briefing under submission without oral argument.  For the reasons discussed

---

[1]  In the interest of protecting Plaintiff's privacy, this Memorandum Opinion and Order uses Plaintiff's first name last initial.

below, the Court finds that this matter should be remanded for additional proceedings.

## II. BACKGROUND

### A. Plaintiff's Application

On December 15, 2011, Plaintiff filed an application for DIB, alleging disability as of October 1, 2011. [Dkt. 13, Administrative Record ("AR") 15, 176-82.] At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"). [AR 64-77.] In a decision dated November 30, 2012, which is the comparison point decision ("CPD"), the ALJ determined that the record evidence supported a finding of disability beginning on October 1, 2011. [AR 83-88.]

Upon subsequent review, the Commissioner found that Plaintiff's impairments had medically improved such that she was able to return to work and no longer disabled as of May 11, 2015. [AR 89, 91, 93-95.] Plaintiff requested reconsideration before a Disability Hearing Officer ("DHO"). [AR 96-98.] On February 25, 2016, the DHO held a hearing and issued a decision upholding the determination of Plaintiff's medical improvement relating to her ability to work and finding her "not disabled." [AR 109-119.] Plaintiff appealed the DHO's decision and requested a hearing before an ALJ. [AR 123.]

An administrative hearing was held on July 5, 2018. [AR 34-63.] In a decision dated October 3, 2018, the ALJ found Plaintiff's impairments had medically improved after the CPD such that she was no longer disabled as of May 11, 2015. [AR 15-27.] After considering Plaintiff's stated reasons for disagreeing with the ALJ's decision, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. [AR 1-3.] Plaintiff now seeks judicial review of that decision.

/ / /

/ / /

## B. The Sequential Analysis

The Commissioner has established an eight-step evaluation process for determining whether a claimant's impairments have sufficiently improved to warrant cessation of benefits. *See* 20 C.F.R § 404.1594(f).

At step one, the issue is whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1594(f)(1). If so, claimant's disability is deemed to have ceased and benefits are terminated. *Id.*

At step two, the issue is whether the claimant's impairment meets or equals the impairments set out in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, benefits continue. *See* 20 C.F.R. § 404.1594(f)(2). If not, the analysis continues.

At step three, the issue is whether there has been any medical improvement since the original determination of disability. If there has been medical improvement, as shown by a decrease in medical severity, the ALJ proceeds to step four. Otherwise, and absent medical improvement, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1594(f)(3).

At step four, the ALJ must determine whether a medical improvement is related to the claimant's ability to work, i.e., whether there has been an increase in her residual functioning capacity ("RFC"). If so, the ALJ proceeds to step six. Otherwise, and absent an ability to perform work (as with an absence of medical improvement), the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1594(f)(4).

Step five applies in either of the following situations: if there has been no medical improvement or if the improvement is unrelated to the claimant's ability to work. *See* 20 C.F.R. § 404.1594(f)(3), (4). At step five, the ALJ determines whether any of the two groups of exceptions to the medical improvement standard of review apply. *See* 20 C.F.R. § 404.1594(f)(5). If no exceptions apply, the claimant's disability continues. If the first group of exceptions apply, the ALJ

proceeds to step six, and if the second group of exceptions apply, the claimant's disability is terminated. *Id.*

If the claimant's medical improvement is related to her ability to work or if one of the relevant step five exceptions applies, the ALJ proceeds to step six. At step six, the ALJ determines whether the claimant's impairments are sufficiently severe so as to limit her physical or mental abilities to do basic work activities. If they are not sufficiently severe, disability is terminated. *See* 20 C.F.R. § 404.1594(f)(6). If the claimant's impairments are sufficiently severe then, at step seven, the ALJ assesses the claimant's current RFC to determine whether she can perform past relevant work. *See* 20 C.F.R. §§ 404.1594(f)(7). Once again, if she can perform past work, disability terminates. Otherwise, the ALJ proceeds to step eight. *Id.*

Finally, at step eight, the ALJ considers whether, given the claimant's age, education, past work experience, and RFC, the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1594(f)(8). If so, disability terminates. Otherwise, benefits continue. *Id.*

**C.  The ALJ's Decision**

The ALJ applied the eight-step sequential analysis. [AR 15-27.] At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity. [AR 17.] At step two, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of impairments listed in the regulations. *Id.* At step three, the ALJ found Plaintiff experienced medical improvement since the CPD. [AR 18-19.] At step four, the ALJ noted that the improvement was related to her ability to work—rendering step five inapplicable. [AR 19.] At step six, the ALJ found that Plaintiff's impairments of degenerative disc disease of the lumbar spine (status/post lumbar spine surgery in October 2015), degenerative disc disease of the cervical spine (status/post cervical spine surgery in April 2016), adjustment disorder, and bipolar disorder were severe impairments that

4

cause more than minimal functional limitations. [AR 20.] At step seven, the ALJ found that as of May 11, 2015, Plaintiff had the RFC for light work, as defined in 20 C.F.R. 404.1567(b), but was limited to work involving simple, repetitive tasks and no more than occasional contact with coworkers and the public, frequent climbing of ramps and stairs, occasional climbing of ropes, ladders or scaffolds, frequent balancing, and occasional stooping, kneeling, crouching, and crawling. [AR 20.] Based on this RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work as a property manager. [AR 20, 25-26.] At step eight, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was able to perform a significant number of jobs existing in the national economy, including representative occupations such as, officer helper, sewing machine operator, and garment sorter. [AR 26-27.] Therefore, the ALJ concluded that Plaintiff's disability ended on May 11, 2015, and she has not become disabled again since that date. [AR 27.]

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074. Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

/ / /

/ / /

## IV. DISCUSSION

Plaintiff challenges the ALJ's determination that her disability ended as of May 11, 2015. Plaintiff argues that the ALJ erred by: (1) misstating Plaintiff's use of medications; (2) giving insufficient weight to Plaintiff's hospital admission and outpatient treatment records; (3) rejecting Plaintiff's allegations and testimony; (4) assigning weight to the medical opinions; and (5) finding that Plaintiff could perform substantial gainful activity. [Pl. Br. at 1-13.] Plaintiff requests reversal and an order of continuation of benefits. [Pl. Br. at 14.] The Commissioner asserts that the ALJ's decision should be affirmed or, in the alternative, remanded for further proceedings. [Def. Br. at 10.]

**A. Medical Evidence**

Plaintiff argues the ALJ erred in assigning weight to the medical opinion evidence and treatment records. [Pl. Br. at 4-5, 8-12; Rep. at 3, 5.] The Court agrees that the ALJ's evaluation of Plaintiff's mental impairment and assessment of related opinion evidence and treatment records is not supported by substantial evidence.

In assessing Plaintiff's mental impairment and limitations, the ALJ relied on the March 2015 opinion of the consultative psychiatrist, Dr. Thaworn Rathana-Nakintara. [AR 17-19, 23-25, 330-34.] However, Dr. Rathana-Nakintara's opinion is inconsistent with the longitudinal record of Plaintiff's mental health condition.

Dr. Rathana-Nakintara did not have the opportunity to review any of Plaintiff's medical records. [AR 330.] As such, his consideration of Plaintiff's mental health treatment history was based on Plaintiff's own reported accounts. [AR 330-33.] Plaintiff told Dr. Rathana-Nakintara that she first became depressed about nine years earlier when she was going through a divorce and was treated with an antidepressant medication, but claimed she could not remember her psychiatrist's name and was not sure whether she had ever had a psychiatric hospitalization. [AR 330-31, 333.] Plaintiff reported that she last saw her psychiatrist about four years

earlier, when he stopped giving her medications and instructed her to just buy a sleep aid from a pharmacy. [AR 330-31, 333.] On her intake forms, Plaintiff crossed out sections regarding her work history, legal history and daily activities, as she did not want to talk about those subjects. [AR 333.] Dr. Rathana-Nakintara found that Plaintiff was "evasive" and "tended to answer most of the questions as, 'I don't remember' especially related to her seeing a psychiatrist and psychiatric treatment." [AR 332.] He also noted that Plaintiff's prognosis was fair and that she would feel significantly better if she were under the care of a psychiatrist. [AR 334.] Nevertheless, Dr. Rathana-Nakintara concluded that Plaintiff had no limitations in functioning, as her "chief complaints were all physical and not at all mental." [AR 333-34.] He diagnosed Plaintiff with adjustment disorder, chronic NOS and assessed a Global Assessment of Functioning (GAF) score of 90, indicating minimal symptoms. [AR 333.]

Many of Plaintiff's self-reports to Dr. Rathana-Nakintara regarding her mental health treatment history were belied by the record. For example, Plaintiff's statements suggesting that she had never been hospitalized psychiatrically and had not seen a psychiatrist or been prescribed antidepressant medications for about four years prior to her March 2015 examination are inconsistent with her treatment records. [AR 330-31, 333.] In August 2012, Plaintiff was involuntarily hospitalized for nine days after reportedly making threats to kill herself and her son.[2] [AR 19,

---

[2] Plaintiff was brought to the hospital by police officers on August 8, 2012, in accordance with section 5150 of the California Welfare and Institutions Code ("Section 5150"), which provides that peace officers may detain a person who is determined to be a danger to herself or others for 72 hours of involuntary treatment at a designated facility. [AR 540, 546]; *see* Cal. Welf. & Inst. Code § 5150. After Plaintiff was admitted to the hospital, she was placed on a hold under section 5250 of the California Welfare and Institutions Code ("Section 5250"), which provides that a person held under Section 5150 may, upon proper evaluation, be certified for intensive treatment for up to 14 days. [AR 540]; Cal. Welf. & Inst. Code § 5250.

540-61.] Plaintiff's treating psychiatrist, Dr. Yun Chong, diagnosed her with psychotic disorder NOS and recommended that she take an antipsychotic medication (Zyprexa). [AR 540, 547, 549.] In February 2013, Plaintiff again received mental health treatment after she reportedly made threats of suicide. [AR 292.] At that time, Plaintiff complained of having difficulty focusing and appeared anxious, hyperverbal, hyperactive, and overwhelmed. [AR 292.] Plaintiff's treating provider prescribed an antidepressant medication (Zoloft) and recommended that she participate in therapy. [AR 292.] Even though Dr. Rathana-Nakintara conducted a clinical interview and mental status examination, his report indicates that he implicitly relied on Plaintiff's self-reports in assessing her mental impairment and functional limitations. [AR 330-34.] The significant conflict between Plaintiff's self-reported treatment history and the longitudinal record undermines the ALJ's reliance on Dr. Rathana-Nakintara's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (explaining that a physician's opinion may be rejected "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999))); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (concluding that treating physician's opinion may be rejected when relies on a claimant's unreliable self-reports). *See Bray*, 554 F.3d at 1228.

Furthermore, in contrast to Dr. Rathana-Nakintara's opinion that Plaintiff had no limitations in mental functioning, the record shows that Plaintiff was psychiatrically hospitalized again in March 2016. [AR 562-80.] The ALJ's consideration of the medical records associated with this second hospitalization was not accurate or complete. [AR 23-24.] At the time of her admission, Plaintiff had significant thought blocking and was paranoid, anxious, almost mute, disheveled in appearance, and responding to hallucinations. [AR 562, 579.] Plaintiff was held on a Section 5250 hold and remained in the hospital for 11 days, as she was found to be "gravely disabled." [AR 562, 577.] Plaintiff's psychiatrists diagnosed her with

bipolar disorder and prescribed antipsychotic medication (Zyprexa). [AR 562.] The ALJ's decision, however, minimized the severity of Plaintiff's mental condition and hospitalization, as follows:

> Although the claimant had said her last psychiatric treatment was four years ago, there was an additional psychiatric hospitalization in March 2016; however it was not due to active suicidal or homicidal ideations, nor was she placed on a 5150 hold. She was released and referred for [outpatient] treatment []. Since that time there is no evidence of any exacerbation of her condition.

[AR 23-24, 562.] While the ALJ was correct that Plaintiff had not been put on a Section 5150 hold, he failed to even mention Plaintiff's Section 5250 hold, the fact that she was hospitalized for 11 days as "gravely disabled," or any of her significant symptoms. And, contrary to the ALJ's suggestion, Plaintiff's later treatment records do indicate some continued mental health issues (i.e., depression, confusion, concentration, and not bathing). [AR 502, 523-31.] Thus, the ALJ's evaluation of Plaintiff's hospitalization records is not supported by substantial evidence. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the portions of the record which support non-disability); *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record").

In sum, the ALJ's evaluation of Plaintiff's mental impairment is not supported by substantial evidence given the ALJ's errors in weighing the relevant medical evidence.

## V. CONCLUSION

The Court has discretion to remand or reverse and award benefits. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). Where no useful purpose

would be served by further proceedings and the record has been fully developed, it may be appropriate to exercise this discretion to direct an immediate award of benefits. *See id.* at 682-83. But where there are outstanding issues that must be resolved before a determination of disability can be made or it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court must remand for further proceedings).

In this case, there are outstanding issues that must be resolved before a final determination can be made, given the ALJ's failure to properly evaluate medical evidence regarding Plaintiff's mental impairment. Because the record is not fully developed and Plaintiff's entitlement to benefits remains unclear, remand for further administrative proceedings would be useful. *See Garrison*, 759 F.3d at 1020; *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error."). On remand, the ALJ should conduct a review of the entire record in a manner that is consistent with the Court's findings.[3]

Accordingly, remand for additional proceedings is appropriate.

**IT IS ORDERED.**

DATED: August 26, 2020

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

---

[3] As this matter is being remanded for further consideration of the medical evidence regarding Plaintiff's mental impairment, the Court has not adjudicated Plaintiff's remaining challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.